(C.D. 4226)

FLETCHER OIL & REFINING CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 1, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
**L.** *Patrick Gray, III,* Assistant Attorney General (*Mollie Strum, Patrick D. Gill* and *Joseph I. Liebman,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The subject merchandise invoiced as Katapa Crude Oil was exported from Indonesia February 8, 1967, in an oil tanker and entered at Los Angeles, California, March 17, 1967, for Fletcher Oil and Refining Company.

The actual classification of the merchandise under item 475.10 as crude petroleum testing 25 degrees A.P.I. (American Petroleum Institute) or more at duty rate of 0.25 cent per gallon, is not in issue. The parties stipulated that the importation in issue was entered as 5,275,507 gallons or 125,607.31 barrels and was returned as consisting of 5,293,441 gallons or 126,034.31 barrels; and that the outturn gauging report calculated as required by Customs Regulations (19 C.F.R. § 13.10) was properly executed and adopted by customs.

Plaintiff asserts the entered value to be $271,312 and contends that the duty should be $13,188.77 rather than the duty assessed of $13,233.60; and that the 17,934 gallons (427 barrels) added to the entered quantity, to arrive at the returned quantity, on which the increase in duty was based, is "free water." It contends that "free water" does not constitute a dutiable moisture or impurity, and the inclusion of said "free water" is contrary to a long-standing administrative action and is a change in said administrative practice without the necessary and proper due notice of said change of practice. Plaintiff filed the application for allowance of excess water on Form 4317 as required by 19 U.S.C.A. § 1507 and Customs Regulations § 15.7 on which it is stated "I have examined the gauge and outturn report which evidences 427 barrels [17,934 gallons] of free water and impurities" and claimed 1% B.S.&W. ("Bottom sediment and water" also described as "basic sediment and water").

The pertinent statutes and administrative regulations are as follows: 19 U.S.C.A. § 1507 (Tariff Act of 1930 section 507) provides:

§ 1507. Tare and draft

The Secretary of the Treasury is authorized to prescribe and issue regulations for the ascertainment of tare upon imported

merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise. June 17, 1930, c. 497, Title IV, § 507, 46 Stat. 732.

19 U.S.C.A. § 1315 (c) (Tariff Act of 1930 section 1315 (c)) provides:

§ 1315. Effective date of rates of duty

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in section 1001, paragraph 813, and section 1562 of this title (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation.

Section 15.7 of the Customs Regulations with respect to allowance for excessive moisture and other impurities provides:

(a) An application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs. The application shall be filed within 10 days after the report of weight has been received by the collector or within 10 days after the date upon which the entry or related document was endorsed to show that invoice weight has been accepted by the entry officer, customs inspector, or other customs officer.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry. (Sec. 507, 46 Stat. 732; 19 U.S.C. 1507.)

The evidence consists of the testimony of two witnesses for the plaintiff, two exhibits introduced by the plaintiff and several stipulations of fact agreed to by the parties.

Plaintiff's first witness, Charles Frogue, a research and development chemist with Edgington Oil Company and formerly assistant manager of Charles Martin & Company, a petroleum inspecting firm, testified that "free water" means *water not held in suspension in oil* (R. 11), and that in "an oil that is lighter than water [like the oil in issue], you will find the water on the bottom of the tank. If the oil is heavier than water, the water will be found on the top of the tank." (R. 11). According to the witness a water detecting paste, exhibit 1, is used in gauging "free water." The paste, which contains a chemical that is not active until it is wet with water, when smeared on a rod and

lowered down through the oil turns red as it reaches water. If there is an inch or two of water on the bottom of the tank it would register accordingly.

He distinguished B.S.&W. from "free water," testifying that B.S.&W. is *held in suspension in the oil* and its quantity is determined by diluting the oil with a solvent and centrifuging in a laboratory in order to separate the sediment and water from the oil (R. 9).

He further testified that the usual amount of impurities and moisture in light crude oil is a "trace" (less than .05 percent) (R. 17). He considered B.S.&W. an impurity because it *is held in suspension* in the body of the oil, but that "free water," which *is not held in suspension*, he did not consider an excessive impurity and moisture in the importation.

Plaintiff's second witness, Leonard F. Mandig, vice-president and formerly an inspector of cargoes of crude oil products for Saybolt & Company, a petroleum inspecting firm, testified that the impurities in the light crude oil in question, the 49 or 50 gravity crude, are nil, and that he agreed entirely with the testimony of witness Frogue (R. 53–54). He produced a sample of a similar crude oil from the same field in the Indonesian area, 50.4 A.P.I., exhibit 2, which he stated was tested in his company's laboratory for B.S.&W. and the content of B.S.&W. was found to be nil (R. 57).

According to a practice of liquidating pursuant to a Bureau letter to the collector of customs, Baltimore, Md., February 26, 1936, bottom sediment and water in excess of 1 percent in the importation of crude petroleum and fuel oil would be considered excessive within the purview of 19 U.S.C.A., § 1507, and when the importer complies with the requirements of Customs Regulations § 15.7 allowance is made in liquidation of entries only for bottom sediment and water in excess of 1 percent. See T.D. 48204(5).

The parties stipulated that the percentage of water being claimed is under 1 percent (R. 3).

The plaintiff's protest raises two issues:

1. Was there "free water," not in suspension in the crude petroleum, which should not have been included in the computation of the total volume of the importation?

2. Did including the "free water" in the computation constitute a deviation from a long-standing uniform administrative practice?

The court resolves both issues in the negative. Plaintiff has not overcome the presumption of correctness attaching to the findings of the district director. There was speculation as to when and where the water was added to the oil, but there was no dispute as to its presence

413

at the time of importation. Plaintiff's evidence does not clearly establish that "free water" in this importation is in fact free from the crude petroleum. There was testimony that when the oil is lighter than water, you will find the water on the bottom of the tank, and when the oil is heavier than water the water will be found on the top of the tank (R. 11). Whether the water is on top of the oil, under the bottom of the oil, or suspended in the oil, the water is a part of the oil, and unless the water is shown to be in excess of 1 percent no allowance can be made for it, under customs administrative practice. T.D. 48204(5); *Esso Standard Oil Co.* v. *United States*, 49 CCPA 63, C.A.D. 797 (1962). In view of the parties' stipulation that the percentage of water being claimed is under 1 percent the court can grant no relief to the plaintiff. Also, assuming that plaintiff had established that there was "free water" in the crude petroleum, it has not shown how "free water" falls outside the term "moisture or other impurities" used in Customs Regulations § 15.7.

Plaintiff's second claim in its protest was that the inclusion of "free water" in the computation of the quantity of crude petroleum oil imported and subject to duty was contrary to a long-standing administrative practice, and represented a change in said practice without giving the necessary and proper due notice of such change. The parties stipulated that there had been four protests against liquidations which included "free water," and that there were reliquidations of said protests in 1967. The fact that four protests were reliquidated at Los Angeles in 1967 is not proof of a long-standing and uniform administrative practice in customs, and plaintiff in its brief conceded that these actions were not sufficient to establish proof of a long-standing and uniform administrative practice.

The protest is overruled.